# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

CRYSTAL COMBS,
<div style="padding-left:4em">Appellant,</div>

v.

DEPARTMENT OF HOMELAND
SECURITY,
<div style="padding-left:4em">Agency.</div>

DOCKET NUMBER
DC-0432-18-0552-I-2

DATE: February 16, 2023

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Neil C. Bonney</u>, Esquire, Virginia Beach, Virginia, for the appellant.

<u>John T. Koerner</u>, Esquire, Washington, D.C., for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

**REMAND ORDER**

The agency has filed a petition for review of the initial decision, which reversed the appellant's removal. For the reasons discussed below, we AFFIRM the reversal of the removal action. We REMAND the case to the regional office

---

[1]A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

for further adjudication of the appellant's claim that the agency retaliated against her for protected activity under the Rehabilitation Act of 1973.

## BACKGROUND

¶2 The appellant was formerly employed as a Management and Program Analyst, GS-0343-14, with the agency's Office of the Chief Information Officer. *Combs v. Department of Homeland Security*, MSPB Docket No. DC-0432-18-0552-I-1, Initial Appeal File (IAF), Tab 4 at 38. At some point in 2012, the appellant filed an equal employment opportunity (EEO) complaint, alleging that the agency had failed to provide her with reasonable accommodation for her disabilities, which required her to telework full time. *Combs v. Department of Homeland Security*, MSPB Docket No. DC-0432-18-0552-I-2, Appeal File (I-2 AF), Tab 5 at 6-7. On August 11, 2015, while the 2012 complaint was still pending, the appellant filed a second EEO complaint, alleging that the agency continued its failure to provide reasonable accommodation and was also discriminating against her based on her disability and in reprisal for her prior protected activity. *Id.* at 2-3.

¶3 On August 21, 2015, the appellant's supervisor issued the appellant a Notice of Unacceptable Performance and Establishment of a Performance Improvement Period (PIP). IAF, Tab 5 at 40-47. The notice advised the appellant that her performance was unacceptable in three critical elements (Core Competency #2: Customer Service; Core Competency #5: Technical Proficiency; and Performance Goal #3: Acquisition Planning) and explained what the appellant was required to accomplish in order to meet the "Achieved Expectations" level in each critical element before the end of the PIP. *Id.* The PIP was initially scheduled to last 60 days but was subsequently extended through October 30, 2015, for a total of 71 calendar days. IAF, Tab 4 at 285.

¶4 On December 3, 2015, the appellant's supervisor determined that the appellant had not met the requirements imposed in the PIP, and he proposed her

removal under 5 U.S.C. chapter 43. *Id.* at 270-78. The appellant was removed on February 9, 2016.[2] *Id.* at 224. Shortly thereafter, on February 25, 2016, the appellant amended her 2015 EEO complaint to include the proposal notice and removal as alleged discriminatory actions. I-2 AF, Tab 5 at 8-9.

¶5      On May 24, 2017, the appellant filed a Board appeal contesting her removal. *Combs v. Department of Homeland Security*, MSPB Docket No. DC-0432-16-0537-I-1, Initial Decision (Dec. 28, 2017). On December 28, 2017, an administrative judge reversed the removal and ordered the appellant's reinstatement, finding that the agency had denied her due process by failing to consider her response to the proposal notice. *Id.* On February 1, 2018, the agency filed a timely petition for review of that decision.[3]

¶6      Shortly thereafter, on February 14, 2018, the appellant's supervisor issued a second proposal to remove the appellant pursuant to 5 U.S.C. chapter 43, again charging her with failure to demonstrate acceptable performance based on the August 21, 2015 PIP notice. IAF, Tab 5 at 5-7. In the alternative, he proposed that the appellant be removed pursuant to 5 U.S.C. chapter 75 based on charges of unacceptable performance and conduct unbecoming a Federal employee. *Id.* at 9-17. The charge of unacceptable performance was based on the same alleged

---

[2] Meanwhile, on December 30, 2016, the Equal Employment Opportunity Commission (EEOC) issued a decision on the appellant's 2012 complaint, finding that the agency "abruptly revoked [her] telework accommodation, inexplicably delayed restoring [her] telework for four months, failed to respond to [her] request for assistive technology, software, and training, and subsequently penalized [her] for its own failure to reasonably accommodate her." *See* I-2 AF, Tab 5 at 7. The EEOC ordered the agency to provide the appellant with reasonable accommodation; expunge all related written warnings, reprimands, and counseling; conduct a supplemental investigation to determine whether she was entitled to compensatory damages; provide training to the responsible management officials regarding their responsibilities under the Rehabilitation Act; and take appropriate disciplinary action against the responsible management officials. *See id.*

[3] We issued a separate order denying the agency's petition for review in that case. *Combs v. Department of Homeland Security*, MSPB Docket No. DC-0432-17-0536-I-1, Final Order (Feb. 15, 2023).

performance deficiencies underlying the proposed chapter 43 action. *Id*. at 7-13. In support of the charge of conduct unbecoming, the agency alleged that when the appellant defaulted on her mortgage in 2009, she engaged in a prolonged campaign of obstructive and frivolous litigation in order to delay a foreclosure sale on the property, resulting in rebuke from a bankruptcy court judge. *Id*. at 13-17. The agency asserted that the appellant engaged in a "pattern of abuse" of the bankruptcy court system for the purpose of delaying her creditors from enforcing their rights to the property and demonstrated that she was unwilling to satisfy her debts, raising concerns about her responsibility and trustworthiness in her position. *Id*. 16-17. After providing the appellant an opportunity to respond, the agency removed the appellant effective April 27, 2018. IAF, Tab 4 at 38-51.

¶7 The appellant then filed a second Board appeal challenging the agency's April 27, 2018 removal decision. IAF, Tab 1. She asserted affirmative defenses of disability discrimination based on failure to accommodate and disparate treatment, and she also alleged retaliation for prior protected EEO activity. IAF, Tab 1 at 6, Tab 10 at 4-5. She initially requested a hearing but subsequently withdrew her request. IAF, Tab 1 at 2, Tab 22 at 3. The appeal was dismissed without prejudice to refiling and later automatically refiled. IAF, Tab 24, Initial Decision; I-2 AF, Tabs 1-2.

¶8 Shortly thereafter, the appellant's representative submitted a copy of a March 26, 2019 decision by the Equal Employment Opportunity Commission (EEOC) resolving the appellant's 2015 complaint.[4] I-2 AF, Tab 5. In its decision, the EEOC determined that the agency "failed in its duty to reasonably accommodate [the appellant's] disabilities by either not providing [her] with adequate equipment, software and training, or unreasonably delaying the

---

[4] The decision was published under the name *Patricia W. v. Department of Homeland Security*, EEOC Appeal No. 0120172637, 2019 WL 1761759 (Mar. 26, 2019). The EEOC has since denied the agency's request for reconsideration. *Patricia W. v. Department of Homeland Security*, EEOC Petition No. 2019003714, 2019 WL 5309320 (Oct. 11, 2019).

provision of necessary technologies to support her accommodation of full-time telework which, in turn, negatively impacted [her] work performance." *Id*. at 17. The EEOC further found that the August 21, 2015 PIP, as well as the previous issuance of a March 2015 performance counseling memorandum (PCM), "directly resulted from the [a]gency's failure to provide [the appellant] with adequate technologies required to effectively telework from home as a reasonable accommodation to her disabilities." *Id*. Among other remedies, the EEOC directed the agency to expunge the PIP and PCM. *Id*. at 20. The EEOC declined to address the appellant's claims concerning her February 25, 2016 removal, as those issues were then before the Board. *Id*. at 10.

¶9      In light of the EEOC decision, the administrative judge ordered the parties to provide additional evidence and argument regarding her performance and her discrimination claims. I-2 AF, Tab 4 at 1. After the record closed, the administrative judge issued an initial decision based on the written record, reversing the agency removal action. I-2 AF, Tab 12, Initial Decision (ID).

¶10      In his decision, the administrative judge considered the performance-based charge under both chapter 43 and chapter 75 standards. Regarding the chapter 43 basis for the action, the administrative judge found that, because the PIP had been expunged, the agency could not show that the appellant's performance was unacceptable in one or more critical elements of her position or demonstrate that it gave her a reasonable opportunity to improve her performance to an acceptable level. ID at 6. Regarding the charge of unacceptable performance under chapter 75, the administrative judge again found that the agency relied on the expunged PIP to provide the appellant with the specific objectives she needed to complete in order to demonstrate acceptable performance. ID at 7. Because the PIP was expunged, he concluded that the agency could not demonstrate that the performance standards against which it assessed the appellant's work were reasonable and that they provided an accurate measurement of the appellant's performance. *Id*.

¶11     As to the remaining charge, the administrative judge found that the agency failed to establish that the appellant's conduct during the bankruptcy proceeding constituted conduct unbecoming a Federal employee. ID at 10-11. In reaching that conclusion, the administrative judge found that (1) involvement in a bankruptcy proceeding is not illegal or conduct unbecoming a Federal employee; (2) even if the appellant's "zealous advocacy of her financial interests" did draw rebuke from the bankruptcy court, she was acting on the advice of her attorney, who had significant expertise in bankruptcy and foreclosure law and who certified in an affidavit that the appellant's defensive legal strategies were entirely within the bounds of the law; and (3) many of the actions mentioned by the bankruptcy court in its rebuke of the appellant occurred during a period of time when the appellant was not a Federal employee, and therefore her conduct could not constitute "conduct unbecoming a Federal employee." ID at 10-11. The administrative judge further found the agency could not establish a nexus between the appellant's conduct and the efficiency of the service. ID at 11-12.

¶12     Turning to the appellant's affirmative defenses, the administrative judge determined, based on the findings in the March 26, 2019 EEOC decision, that the agency violated the Rehabilitation Act by failing to adequately accommodate the appellant's disabilities. ID at 12-16. The administrative judge further found that the appellant's disability was a motivating factor in the decision to remove her. ID at 17-18. Finally, the administrative judge found that the appellant established her retaliation claim. ID at 18-19. In reaching that conclusion, the administrative judge found that the imposition of the PIP was retaliatory and that because the charges of unacceptable performance were predicated on the PIP, the appellant's protected activity was a motivating factor in the agency's decision to remove her. ID at 19.

¶13     The agency has filed a petition for review of the initial decision. *Combs v. Department of Homeland Security*, MSPB Docket No. DC-0432-18-0552-I-2, Petition for Review (PFR) File, Tab 1. On review, the agency concedes that it

denied the appellant reasonable accommodation, as the EEOC determined, and states that it no longer relies on chapter 43 as a basis for its action. *Id.* at 1-2, 13. However, the agency argues that the administrative judge erred in not sustaining the chapter 75 charges of unacceptable performance and conduct unbecoming. *Id.* at 6-12. The agency further contends that the administrative judge erred in finding that its action was retaliatory. *Id.* at 12-13. The appellant has filed a response in opposition to the petition for review, as well as a notice declining interim relief.[5] PFR File, Tabs 3-4. The agency has filed a reply to the appellant's response.[6] PFR File, Tab 5.

---

[5] The appellant's request to waive interim relief is granted. *See Ellshoff v. Department of the Interior*, 69 M.S.P.R. 585, 587-88 (1996) (finding that an appellant who has an alternative source of income may waive interim relief, because the purpose of the interim relief is to protect the appellant from hardship).

[6] The appellant has since filed a motion for leave to file a surreply, and the agency has filed a motion opposing the appellant's request for leave to file a surreply. PFR File, Tabs 7, 9. In her request for leave to file a surreply, the appellant argues that the agency raised new issues in its reply to the response to the petition for review regarding the "other ways the agency can allegedly prove its charge." PFR File, Tab 7. Because we have fully addressed the agency's argument here and still find that the agency failed to prove its charges, we deny both motions.

## DISCUSSION OF ARGUMENTS ON REVIEW

The agency failed to prove the charge of unacceptable performance.[7]

¶14     In a performance-based action under chapter 75, specific standards of performance need not be established and identified in advance. *Shorey v. Department of the Army*, [77 M.S.P.R. 239](#), 244 (1998). Rather, an agency must simply prove by preponderant evidence that its measurement of the appellant's performance was both accurate and reasonable. *Id.* Nevertheless, the agency may not "circumvent [c]hapter 43 by charging that an employee should have performed better than the standards communicated to him in accordance with [c]hapter 43." *Lovshin v. Department of the Navy*, [767 F.2d 826](#), 842 (Fed. Cir. 1985).

¶15     The agency argues that, even though the PIP was expunged from the appellant's record, the relevant objectives were communicated to her in other ways, either through her Performance Work Plan (PWP) or through email communications from supervisors. PFR File, Tab 1 at 6-8. However, the removal proposal explicitly identified the PIP as the source of the objectives the

---

[7] It is questionable whether the administrative judge should have adjudicated the performance-based charge under both chapter 43 and chapter 75 standards. It is well established that an agency may take a performance-based action under *either* chapter 43 or chapter 75, *Lovshin v. Department of the Navy*, [767 F.2d 826](#), 843 (Fed. Cir. 1985), and may convert the action from chapter 43 to chapter 75 if a hearing has not yet occurred, *Ortiz v. U.S. Marine Corps*, [37 M.S.P.R. 359](#), 363 (1988). It is also permissible for an agency to bring a hybrid action, charging an employee with unacceptable performance under chapter 43 procedures while bringing an additional or alternative charge, such as conduct unbecoming, under chapter 75 procedures. *Lovshin*, 767 F.2d at 843. However, we are unaware of any case in which the Board has considered allegations of unacceptable performance under *both* standards. Moreover, the Board has suggested in dicta that chapter 43 and chapter 75 procedures are, by statute, mutually exclusive with respect to the same charge. *See Aguzie v. Office of Personnel Management*, [112 M.S.P.R. 276](#), ¶ 4 n.2 (2009) (citing [5 U.S.C. § 7512](#)(D)), *reconsidered on other grounds*, [116 M.S.P.R. 64](#) (2011). However, if the administrative judge did err on this point, the error does not affect the outcome of the case because the agency has indicated that it no longer relies on chapter 43 as a basis for its action, and the administrative judge correctly found that the agency failed to prove a charge of unacceptable performance under chapter 75.

appellant allegedly failed to complete. *See* IAF, Tab 5 at 7 ("In the PIP notice, you were given specific objectives that you needed to complete in order to demonstrate acceptable performance . . . [and] you failed to complete these objectives[.]"). Even if the agency might have properly charged the appellant with unacceptable performance based on her alleged failure to meet objectives set forth in the PWP or email communications, the Board is required to review the agency's decision solely on the grounds invoked by the agency and may not substitute what it considers to be a more adequate or proper basis. *Gottlieb v. Veterans Administration*, 39 M.S.P.R. 606, 609 (1989); *see, e.g.*, *Fargnoli v. Department of Commerce*, 123 M.S.P.R. 330, ¶¶ 14-15 (2016) (finding that the agency failed to prove a specification of improper storage of an firearm in an unoccupied Government-owned vehicle when the appellant's firearm was unauthorized, but the specification relied explicitly on an agency policy applicable to authorized firearms only). Accordingly, we agree with the administrative judge that, because the PIP has been expunged, the agency cannot establish that the objectives set forth "[i]n the PIP notice" provided an accurate and reasonable measurement of the appellant's performance. ID at 7; *see* IAF, Tab 5 at 7.

The agency failed to prove the charge of conduct unbecoming a Federal employee.

¶16    The agency also argues on review that the administrative judge erred in finding that the charge of conduct unbecoming a Federal employee could not be sustained. PFR File, Tab 1 at 8-12. The agency states that the language from the conduct unbecoming charge alleging that the appellant engaged in a "pattern of abuse" of the bankruptcy court system for the purpose of "delaying [her] creditor(s) from enforcing their rights to her rental property" was drawn directly from a bankruptcy court order and that the determination by the bankruptcy court must be given collateral estoppel effect. *Id.* at 8-9.

¶17    We agree with the appellant that the requirements of collateral estoppel are not satisfied. PFR File, Tab 4 at 10. Under the doctrine of collateral estoppel, once an adjudicatory body has decided a factual or legal issue necessary to its judgment, that decision may preclude relitigation of the issue in a case concerning a different cause of action involving a party to the initial case. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Collateral estoppel is appropriate when the following conditions are met: (1) an issue is identical to that involved in the prior action; (2) the issue was actually litigated in the prior action; (3) the determination on the issue in the prior action was necessary to the resulting judgment; and (4) the party against whom issue preclusion is sought had a full and fair opportunity to litigate the issue in the prior action, either as a party or as one whose interests were otherwise fully represented in the that action. *Hau v. Department of Homeland Security*, 123 M.S.P.R. 620, ¶ 13 (2016), *aff'd sub nom. Bryant v. Merit Systems Protection Board*, 878 F.3d 1320 (Fed. Cir. 2017).

¶18    Here, the issues before the bankruptcy court and the Board are not identical. The issue before the Board is whether the agency has met its burden of proving that the appellant's conduct during the course of civil bankruptcy proceedings constituted conduct unbecoming of a Federal employee. By contrast, the issues before the bankruptcy court judge were whether the appellant's motion for a stay of enforcement of the bankruptcy court's order should be granted, and whether an equitable servitude against the appellant's rental property should be granted to the lender. *See* IAF, Tab 5 at 544-49, 688-89. Hence, the doctrine of collateral estoppel does not apply.

¶19    The agency also disputes the administrative judge's finding that, because the appellant was not a Federal employee during much of the time that the allegedly unbecoming conduct occurred, the agency cannot establish a nexus between the purported misconduct and the efficiency of the service. PFR File, Tab 1 at 10; *see* ID at 11-12. In support of its argument, the agency cites a nonprecedential Board decision, *Dale v. Department of the Treasury*, MSPB

Docket No. CH-0752-10-0300-I-8, Final Order (Sept. 18, 2014), and a precedential decision, *Adams v. Department of the Army*, 105 M.S.P.R. 50, ¶ 18, *aff'd*, 273 F. App'x 947 (Fed. Cir. 2008).

¶20    We agree with the appellant that both cases are distinguishable or inapposite. *See* PFR File, Tab 4 at 8-10. As an initial matter, *Dale* is a nonprecedential decision and therefore does not constitute binding precedent on the Board. *See* 5 C.F.R. § 1201.117(c)(2). In any event, the appellant in *Dale* was convicted of multiple counts of criminal bankruptcy fraud and for making false statements in relation to bankruptcy proceedings prior to his Federal service. In contrast, the appellant here was involved only in a civil bankruptcy proceeding and was not charged with fraud or with making false statements. Furthermore, as the administrative judge found, the appellant's actions during the course of the bankruptcy proceedings were not illegal and were consistent with the advice of competent legal counsel. *See* IAF, Tab 4 at 43, 53-61; ID at 10-12.

¶21    *Adams* is also inapposite. The appellant in *Adams* was removed for failure to maintain a condition of employment after the agency suspended his access to the agency's computer system, based on derogatory information about his debts. *Adams*, 105 M.S.P.R. 50, ¶¶ 3, 19. Unlike the alleged misconduct in this case, failure to meet a condition of employment bears an obvious nexus to the efficiency of the service. *See Flores v. Department of Defense*, 121 M.S.P.R. 287, ¶ 12 (2014). The agency attempts to elide the distinction by arguing that the appellant's fiduciary responsibilities were as great, if not greater, than those of the appellant in *Adams*. PFR File, Tab 1 at 11-12. Be that as it may, it remains true that the charge at issue in *Adams* does not resemble the charge at issue here.

We remand the case for further adjudication of the appellant's retaliation claim.

¶22    On review, the agency argues that the administrative judge erred in finding that the appellant proved her claim of retaliation for protected activity under the Rehabilitation Act. PFR File, Tab 1 at 12-13; Tab 5 at 7-8; *see* ID at 12-19. The Rehabilitation Act incorporates by reference the standards of the Americans with

Disabilities Act of 1990 (ADA), as amended by the Americans with Disabilities Amendments Act of 2008 (ADAAA), and the Board applies those standards to determine whether there has been a Rehabilitation Act violation. *See* 29 U.S.C. § 791(f); *Miller v. Department of the Army*, 121 M.S.P.R. 189, ¶ 13 n.3 (2014). As relevant here, the ADA[8] provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

¶23    On review, the agency argues that the decision to place the appellant on the PIP could not have been retaliation for the appellant's EEO complaint because the supervisor who placed the appellant on the PIP did so before he became aware of the fact that the appellant had filed an EEO complaint against him. PFR File, Tab 1 at 12. However, the appellant asserts that the agency retaliated against her not only for filing EEO complaints but also for requesting reasonable accommodation. IAF, Tab 10 at 5. A request of reasonable accommodation is also protected activity under 42 U.S.C. § 12203(a). *See Southerland v. Department of Defense*, 119 M.S.P.R. 566, ¶ 21 (2013) (citing numerous court and EEOC decisions), *overruled on other grounds by Pridgen v. Office of Management and Budget*, 2022 MSPB 31. Thus, even if the supervisor was unaware of the appellant's EEO complaints, it remains possible that the appellant's placement on a PIP and subsequent removal were retaliatory.

¶24    In addressing the appellant's retaliation claim, the administrative judge applied the standard the Board set forth in *Southerland*. Under that standard, the appellant must first prove that her protected activity was a motivating factor in the agency's removal action. *Southerland*, 110 M.S.P.R. 566, ¶ 23. The Board further held in *Southerland* that if the appellant meets her initial burden, the

---

[8] The ADAAA makes no reference to retaliation and leaves the ADA retaliation provisions undisturbed.

burden shifts to the agency to prove by clear and convincing evidence that it still would have taken the action in the absence of the retaliatory motive. *Id.*, ¶¶ 23-25.

¶25 However, during the pendency of this petition for review, the Board issued its decision in *Pridgen*, 2022 MSPB 31, which overruled *Southerland* and held that, in addressing retaliation claims under the Rehabilitation Act, the Board will instead apply a more stringent "but for" standard of causation. *Pridgen*, 2022 MSPB 31, ¶¶ 46-47. In other words, to show a violation under the current standard, the appellant must show not merely that her protected activity was a motivating factor in the contested action but that the agency would not have taken the action in the absence of her protected activity. Under this standard, unlike the framework for retaliation claims under 42 U.S.C. § 2000e-16, the burden of proof does not shift to the agency. *Id*., ¶ 47.

¶26 Hence, it is necessary to reconsider the appellant's retaliation claim in accordance with *Pridgen*, applying a more stringent "but for" causation standard. Because neither the administrative judge nor the parties had the benefit of *Pridgen*, the parties did not have an opportunity to fully develop the record on this issue. Moreover, we cannot determine based on the existing record whether the appellant proved that retaliatory animus was the "but for" cause of the agency's decisions to place her on the PIP and subsequently remove her. In particular, we note that the March 26, 2019 EEOC decision is not dispositive of the issue. While the EEOC found that the appellant's placement on the PIP resulted from an unlawful denial of reasonable accommodation, the EEOC also found—based on the record before it—that the appellant failed to provide adequate evidence that discriminatory or retaliatory animus played a role in her supervisor's monitoring of her work or assignment of tasks. I-2 AF, Tab 5 at 20. The EEOC did not consider the question of whether the imposition of the PIP and subsequent removal were retaliatory.

¶27     Accordingly, we remand the appeal for further development of the record and a new finding on the appellant's claim of retaliation for protected activity under the Rehabilitation Act.  Because the agency failed to prove its charges, and the action must therefore be reversed regardless of the outcome on remand, we order the agency to cancel the removal action and provide the appellant appropriate back pay.  *See Martin v. U.S. Postal Service*, 123 M.S.P.R. 189, ¶ 14 (2016).

## ORDER

¶28     For the reasons discussed above, we REMAND this case to the Washington Regional Office for office for further adjudication of the appellant's claim of retaliation for protected activity under the Rehabilitation Act.

¶29     Pending the remand proceedings, we ORDER the agency to cancel the removal and to retroactively restore the appellant effective April 28, 2018.  *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984).  The agency must complete this action no later than 20 days after the date of this decision.

¶30     We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision.  We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order.  If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶31     We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it

has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶32      No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶33      For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.


FOR THE BOARD:                    /s/ for

                                      Jennifer Everling
                                      Acting Clerk of the Board

Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion.  Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.